IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CECIL W. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  03-C-4023 |
| v. | ) | |
| JOHN E. POTTER, Postmaster General of the United States, | ) | HONORABLE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cecil Watson is suing Defendant John E. Potter, Postmaster General of the United States, for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Before this court is Defendant's motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's motion to dismiss is DENIED.

I.  FACTUAL BACKGROUND

The United States Postal Service hired Plaintiff as a letter carrier in March 1984, and promoted Plaintiff to a grade level EAS-13 position as Supervisor, Station Branch Operations in November 1988. In April 1990, Plaintiff applied for and was denied promotion to an EAS-16 position a Branch Manager. Plaintiff filed a formal complaint of discrimination with the Equal

-1-

Employment Opportunity Commission ("EEOC"), and the Administrative Law Judge ("ALJ") issued a finding of discrimination in June 1993.

In October 1996, Plaintiff filed an enforcement action in this Court to compel Defendant to comply with the ALJ's decision and remedy. Plaintiff prevailed: On September 16, 1998, this Court issued an order in case number 96-C-7044 requiring Defendant to place Plaintiff in the next available EAS-17 Manager, Customer Services position. On September 3, 2002, after a remand by the Seventh Circuit, this Court issued an order (the "2002 order" or "2002 court order"), also in case number 96-C-7044, directing Defendant to place Plaintiff into an EAS-21 position "immediately" and to compensate Plaintiff with backpay.[1]

On September 28, 2002, Plaintiff received a letter from Alexander Perchorowicz ("Perchorowicz"), Manager of Post Office Operations, directing Plaintiff to report on October 7, 2002 to the Hoffman Estates, IL Post Office, a branch station of the Schaumburg, IL Post Office, in the capacity of Branch Manager.

Plaintiff alleges that the position in which he was placed on October 7, 2002 was not and is still not a "vacant" position. Rather, another EAS-21 level employee, Timothy Adam ("Adam"), is the permanent Branch Manager at the Hoffman Estates Post Office, but was on a detail assignment away from the position when Plaintiff was ordered to report. Consequently, should Adam return to his permanent position as Hoffman Estates Branch Manager, Plaintiff would have to be displaced. Plaintiff contends that there were two other vacant EAS-21 positions within the district that Plaintiff worked at the time of the court's 2002 order, but

---

[1] The instant case is in a curious procedural position. Plaintiff has filed this case, 04-C-4023, to enforce the previous orders (dated September 16, 1998 and September 3, 2002) in case 96-C-7044.

Defendant refused to offer these positions to Plaintiff and filled both positions with Caucasian males. Plaintiff also contends that no other person outside Plaintiff's protected group has been assigned to a permanent managerial or supervisory position that was not vacant prior to placement.

Plaintiff further alleges that William Simmons ("Simmons"), Manager of Human Resources, purposefully sent Plaintiff's new boss, Michael Victor ("Victor"), Postmaster of the Schaumburg Post Office, a copy of this Court's 2002 order. The order contains Watson's EEO history and background. Plaintiff maintains Simmons did so to "cause irreparable harm to [Plaintiff's] career." (Compl. ¶ 20). Plaintiff discovered Simmons' action during a September 28, 2002 telephone conversation to which Plaintiff, Victor, and Adam were party. During that conversation, Victor acknowledged that he gained a copy of the court order from Simmons, not from public access records.

Plaintiff initially filed his Complaint against Defendant Potter as well as managers Perchorowicz and Simmons. Moreover, the initial Complaint contained not only race discrimination and retaliation claims, but also a 42 U.S.C. § 1981 claim and an intentional infliction of emotional distress claim. Defendant then filed the motion to dismiss now before this Court. On September 4, 2003, Judge Gettleman granted in part that motion by dismissing Perchorowicz and Simmons as defendants and dismissing Plaintiff's tort and § 1981 claims. What remains of Plaintiff's Complaint is his claim that Defendant Potter violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff on the basis of race and retaliating against Plaintiff for complaining of discrimination.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, Fed. R. Civ. P. (12)(b)(6), and views the allegations in the light most favorable to the plaintiff. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The Court should not dismiss a complaint "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III. ANALYSIS

Title VII makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima face case of race discrimination, a plaintiff must show: "(1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably." Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002).

Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To

establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action." Dey v. Colt Construction & Development Co., 28 F.3d 1446, 1457 (7th Cir. 1994) (internal quotation marks and citations omitted).

Defendant moves to dismiss on the grounds (1) Plaintiff cannot identify an "adverse employment action," a requirement for both prima facie cases, and (2) Plaintiff cannot establish the "causal link" required to make a prima facie showing of retaliation.

### A.     ADVERSE EMPLOYMENT ACTION

To establish a prima facie case of race discrimination or retaliation discrimination, Plaintiff must show that he suffered an adverse employment action at the hands of Defendant.

An adverse employment action is one that **"**significantly alters the terms and conditions of the employee's job . . . ." Griffin v. Potter, 356 F.3d 824, 829 (7th Cir. 2004).  To be actionable, the employer's action "must be materially adverse, not merely an inconvenience or a change in job responsibilities." Id.  Though "not everything that makes an employee unhappy" is actionable, Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996), the Seventh Circuit has noted how broadly it defines the phrase:

> Although creating a precise list of activities that constitute adverse employment actions would be impossible because of the unique circumstances of individual cases, we have indicated that materially adverse actions may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."

Hilt-Dyson v. City Of Chicago, 282 F.3d 456, 465-66 (7th Cir. 2002) (quoting Ribando v. United Airlines, Inc., 200 F.3d 507, 510 (7th Cir. 1999)); see also Herrnreiter v. Chicago Housing Authority, 315 F.3d 742, 743-45 (7th Cir. 2002) (describing cases that have been found to satisfy the statutory criterion).

Defendant argues that Watson's complaint about being assigned to a position that was not vacant amounts to nothing more than a speculative fear of being ousted. Thus, Defendant argues, it is not evidence of a tangible, adverse employment action. Taking the facts alleged in the Complaint as true, however, Adam is merely on "detail" at another post office, and Plaintiff is serving the position–Hoffman Estates Branch Manager–Adam left only temporarily. Plaintiff, therefore, holds a position from which Plaintiff could be ejected if Adam ends his detail and returns to his permanent position. Construing all reasonable inferences in Plaintiff's favor, Defendant, *has* "significantly alter[ed] the terms and conditions of" Plaintiff's job by giving Plaintiff a position that is not permanent but, rather, subject to divestment. Griffin, 356 F.3d at 829. Thus, the Court finds that Plaintiff has identified an adverse employment action sufficient to state a prima facie case for race discrimination.

Defendant also argues that Simmons' having supplied a copy of the 2002 court order to Plaintiff's new boss does not constitute an adverse employment action. As support Defendant cites Burlington Industries, Inc.. v. Ellerth, 524 U.S. 742, 761 (1998), which states that actionable employment actions must represent a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington further acknowledges, however, that "other indices that might be unique to a particular situation" can give rise to an adverse

employment action.  Id.  Moreover, the Seventh Circuit has found adverse employment action when "the conditions in which [a plaintiff] works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment–an alteration that can fairly be characterized as objectively creating a hardship . . . ."  Herrnreiter, 315 F.3d at 744.  Construing all reasonable inferences in Plaintiff's favor, having a new boss learn from a colleague of Plaintiff's EEO history before Plaintiff even arrives, without having to gather the initiative and set aside the time to learn of that history through public access records, could in fact substantively change the conditions in which Plaintiff works.  Forewarning a supervisor of a new employee's EEO history could create a negative workplace environment.  Cf. Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881, 894 (7th Cir. 1996) (holding that an employer might commit unlawful retaliation by revealing, without any apparent justification, that one of its former employees has filed a discrimination suit); Czarnowski v. Desoto, Inc., 518 F. Supp. 1252, 1259 (N.D. Ill. 1981) ("Informing a prospective employer that a former employee has filed an EEOC charge is an adverse action similar to that of harassing an employee or giving a poor recommendation or reference on behalf of an employee for the purpose of establishing the second element of a prima facie case of retaliation.").  Thus, Plaintiff has shown an adverse employment action sufficient to state a prima facie case for retaliation.

### B.    CAUSAL LINK

To establish a prima facie case of retaliation discrimination, Plaintiff must demonstrate "a causal link between the protected expression and the adverse action."  Dey, 28 F.3d at 1457.

Defendant argues that Plaintiff cannot demonstrate a causal link because too much time has passed between Plaintiff's 1990 complaint of discrimination and the 2002 actions Plaintiff considers adverse. Plaintiff argues that the retaliatory actions of which he complains stem from the 2002 court order, not from his 1990 Complaint.

The filing of an EEOC complaint is the most commonly identified "protected activity" in Title VII cases. See, e.g., Smart v. Ball State University, 89 F.3d 437, 440-41 (7th Cir. 1996). The statute, however, refers to protected activities aside from the mere filing of a complaint:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, *testified, assisted, or participated in any manner in an investigation, proceeding, or hearing* under this subchapter.

42 U.S.C. § 2000e-3(a) (emphases added). The statute supports Plaintiff's argument that the protected activity at issue here is not the filing of his Complaint in 1990, but his participation in the Title VII proceedings that yielded the court order requiring Defendant to place Plaintiff in the next available EAS-21 position in 2002. Viewing the allegations in the light most favorable to Plaintiff, Plaintiff's "participat[ion] in . . . an investigation, proceeding, or hearing" under Title VII and his attempt to enforce the judgment in his favor following that proceeding is the protected activity for the purposes of his prima facie case.[2]

---

[2] For this reason, Watson v. Potter, 2001 WL 1497773, *4 (7th Cir. Nov. 20, 2001) is unhelpful in support of Defendant's argument. In that unpublished order involving Plaintiff, the Seventh Circuit affirmed this Court's decision that there was nothing to tie the adverse employment actions Plaintiff complained of in 1995 to his filing of an EEOC complaint in 1990. As stated, however, the protected activity at issue in this Complaint is not the filing of the EEOC complaint (as it was in 1995), but participation in the proceedings that ended with the 2002 court order.

Having established that Plaintiff can identify a protected activity and an adverse employment action for the purposes of his prima facie case, the Court must determine whether a causal link between the events exists. To establish a causal link, an employee must demonstrate that employer would not have taken adverse action but for the protected expression. McKenzie v. Illinois Department of Transportation, 92 F.3d 473, 483 (7th Cir. 1996). Stated otherwise, a plaintiff "only ha[s] to establish that the protected activity and the adverse action were not wholly unrelated." Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1014 (7th Cir. 1997) (internal quotation marks omitted). "[S]uspicious timing does constitute circumstantial, or indirect, evidence to support a claim of discrimination." Id.

It is true, as Defendant argues, that the greater the temporal distance between a claimant's protected expression and adverse action, the less likely there is a causal link between the events. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 797 (7th Cir. 1997). But temporal distance is not an issue here. The court ordered Defendant to place Plaintiff in the next available EAS-21 position on September 3, 2002. On September 28, 2002, Plaintiff learned that his new boss had received a copy of the 2002 court order containing Plaintiff's EEO history from Simmons. The same day, Plaintiff was ordered to report to his new "permanent" but not-yet-vacated position on October 7, 2002. Plaintiff has sufficiently demonstrated that the alleged retaliatory actions "took place on the heels of" the 2002 court order. Cf. Dey v. Colt Const. & Development Co., 28 F.3d 1446, 1458(7th Cir. 1994) ("Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity."). Moreover, Plaintiff has sufficiently demonstrated that, but for existence of the court's 2002 order, Defendant would not

have shown Plaintiff's new boss Plaintiff's EEO history.  In the least, Plaintiff has demonstrated that the events were not wholly unrelated.  See Hunt-Golliday, 104 F.3d at 1014; McKenzie, 92 F.3d at 483.

Because Plaintiff has demonstrated a causal link between his protected expression and the adverse action taken by Defendant, Plaintiff has stated a prima facie case for retaliation.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **November 2, 2005**