# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CECIL W. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.   03-C-4023 |
| v. | ) | |
| JOHN E. POTTER, Postmaster General of the United States, | ) | HONORABLE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cecil Watson brought this action against Defendant John E. Potter ("Defendant"), Postmaster General of the United States, for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. At issue were the actions and events surrounding the implementation of this court's September 3, 2002 Memorandum Opinion and Order ("Order"), intended to redress the acts of discrimination committed by Defendant as Plaintiff's employer. The instant matter proceeded to bench trial on October 30, 2006.

At the close of trial, both parties submitted post-trial memoranda on the subject of liability. Based on the trial, and parties' pre-trial and post-trial submissions, the Court makes the following findings of fact and conclusions of law. To the extent that any findings may be deemed conclusions of law, they shall also be considered conclusions. To the extent that any conclusions may be deemed findings of fact, they shall also be considered findings. *See Miller v. Fenton*, 474 U.S. 104, 113-14 (1985).

## I. FINDINGS OF FACT

### A. Plaintiff's placement under the Order

1. On October 30, 2006, a trial was held before this Court regarding the above captioned case, in which Plaintiff Cecil W. Watson ("Watson") represented himself as a Pro se plaintiff.

2. On September 3, 2002, this Court issued a decision related to Plaintiff's prior discrimination complaint (96 C 7044), ruling that Plaintiff was entitled to additional relief. This Court's memorandum opinion and order in that decision stated, in relevant part, that the Postal Service shall "immediately plac[e] Watson in an EAS 21 position with commensurate salary."

3. William Simmons ("Simmons"), who was the Postal Service's Manager of Human Resources for the Northen Illinois District, was responsible for locating an EAS-21 position for Watson in accordance with the court's order.

4. On September 28, 2002, Watson received a letter from Alexander Perchorowicz ("Skip Perch"). The letter stated that Plaintiff was being reassigned to the Hoffman Estates branch office ("Hoffman Estates branch") of the Schaumburg IL Post Office ("Schaumburg PO"), where he would be working as Manager, Customer Services ("branch manager").

5. Plaintiff commenced work at the Hoffman Estates branch on October 7, 2002.

### B. Organization of postal service employees

6. Simmons did not consider Watson for placement in any positions outside of the Northern District of Illinois. Around the time of this Court's order on September 3, 2002, there was a EAS 21 position available at the Great Lakes Area Office for which Plaintiff was not considered.

7. Around the time of this Court's order on September 3, 2002, another EAS 21 position was open at the St. Charles IL Post Office ("St. Charles PO"). That position was officially filled on September 7, 2002 by Ralph Atchue, after a placement process that had begun before this Court rendered its opinion and order. The announcement of Atchue's appointment was made September 18, 2002.

8. At the time Plaintiff was placed in the Hoffman Estates position, it was held as a permanent position by another employee by the name of Timothy Adam ("Adam"). Adam was not physically situated at the Hoffman estates branch, but was instead working on "detail" at the Schaumburg PO.

9. The detail system is an informal, unregulated employment network through which Postal Service employees find positions which are preferable to their permanent position for some period of time. The detail system is frequently used to shift employees between positions within the Postal Service.

10. A detail assignment can be terminated at management's discretion, in which case the employee is generally allowed to return to his or her permanent position.

11. An employee working on detail assignment retains some right to return to his or her permanent position.

12. Adam had been working on detail in the Schaumburg branch for six or seven years prior to this Court's order. There is no indication that he was expected to return to the Hoffman Estates branch at any time in the future.

13. The Postal Service retains the ultimate right to reassign its employees.

14. The Postal Service will generally shift employees and policies in order to accommodate a court order.

15. It is not customary practice to place permanent employees into positions that are held by other employees on a permanent basis.

16. The Postal Service uses a system for monitoring the number of employment positions that are authorized at each postal facility. The staffing complement for the Hoffman Estates branch prior to 2002 allotted one manager.

**C. Conditions of Plaintiff's placement**

17. PS Form 50s ("Form 50"s) are Postal Service forms used to monitor and record changes in employment status. They are not generated for detail positions. The code for reassignment and promotion on a Form 50 is only used for permanent placements.

18. A PS Form 50 was generated for Plaintiff on October 5, 2002. That form indicates that Watson was being reassigned and promoted, that Watson's duty station was the Hoffman Estates branch, that Watson's position would be branch manager, that Watson's rate and grade was EAS 21, and that Watson was to be paid $67,807 per year.

19. Watson's PS Form 50 contains the following words: "Consistent with Court Ruling in Case 96 C 7044." In addition, the form contains language representing Plaintiff's race and sex, as well as an indication that he is disabled in some manner.

20. It is not typical Postal Service practice to indicate past EEO activity or legal actions related to discrimination on an employee's Form 50. It is not typical practice to include incorrect information referencing an employee's disabilities.

21. Plaintiff was paid the EAS 21 salary appropriate for branch manager. At all times he was stationed at Hoffman Estates, he was expected to perform the duties of that position and did, in fact, perform those duties.

22. For approximately the first two years Plaintiff worked at the Hoffman Estates branch, his immediate supervisor was Michael Victor ("Victor"), the Postmaster of the Schaumburg PO. Following that period of time, plaintiff's immediate supervisor was Kenneth Michalowski ("Michalowski").

23. At the time Plaintiff was placed at the Hoffman Estates branch, Simmons sent a copy of this court's September 3, 2002 order to Victor.

24. There were no significant interpersonal problems between Plaintiff and Victor during Plaintiff's time at the Hoffman Estates branch.

25. On January 7, 2003, Plaintiff sent a letter to Lynn Smith, Lead Executive/District Manager for the Northern IL District of the Postal Service. In that letter, Plaintiff sought redress of the problems being considered in the instant case.

26. At no time did Adam attempt to reclaim the duties or physical situation of his permanent position as Hoffman Estates branch manager.

**D. EEOC complaint process**

27. On October 7, 2002, Plaintiff commenced EEOC proceedings. These proceedings were based upon the EEO and discrimination action information that was shared with Plaintiff's co-workers and supervisors, as well as the fact that his position did not appear to be vacant.

28. On March 13, 2003, Plaintiff received a notice of Final Agency Decision from the EEOC. This letter stated that Plaintiff "filed a civil action with the United States District Court of the Northern District of Illinois, Case No. 96 C 7044, which was settled on September 3, 2002. Your complaint is dismissed since the issue(s) raised are reasonably related to or are the same as those presented in the civil action."

29. Plaintiff filed the instant action on June 12, 2003, Case No. 03 C 4023, within 90 days of the EEOC's notice of final agency decision.

## II. CONCLUSIONS OF LAW

Plaintiff maintains that he suffered discrimination at the hands of Defendant through the allegedly inappropriate assignment and surrounding conditions at the Hoffman Estates branch, in violation of his rights under Title VII. This placement was made pursuant to court order, therefore the parties at trial also addressed the terms of this Court's September 3, 2002 memorandum opinion and order, as well as the extent to which Defendant satisfied its duties under that ruling.

The core of Plaintiff's Title VII claim is that the Defendant did not comply with this Court's prior order. To that basic claim, he appends a claim that the Defendant discriminated/retaliated against him by including reference to his EEO activity in his file. Although the standards are somewhat different, this Court will focus on the question of whether of whether Defendant failed to comply.

### A. TITLE VII ACTION

In order to pursue a Title VII claim, Plaintiff must first exhaust all administrative remedies. *See Gibson v. West*, 201 F.3d 990 (7th Cir. 2000). In this instance, this means that Plaintiff is required to have pursued his EEOC action through the various steps delineated in 42 U.S.C. § 2000e and related sections of the C.F.R.:

> In the case of a federal employer, a plaintiff must exhaust administrative remedies before filing a lawsuit by taking the following steps: (1) filing an informal complaint by contacting his or her employing agency's Equal Employment Opportunity counselor within 45 days of the alleged discrimination, 29 C.F.R. § 1614.105; (2) if the complaint is not resolved informally within 30 days, the complainant must file a formal written complaint within 15 days of the notice of failure of the informal resolution, 29 C.F.R. §§ 1614.105 and 1614.106; and (3) in order to pursue the matter in court, the complainant must then bring a lawsuit "[w]ithin 90 days of receipt of notice of final action taken by a department ... or by the Equal Employment Opportunity Commission," 42 U.S.C. § 2000e-16(c).

*Townsend v. Lentz*, 2002 WL 32349396, at *1 (W.D. Wis. 2002). These conditions have been satisfied.

However, Plaintiff has failed to put forth sufficient evidence that, but for his race or previous EEOC activity, Defendant would not have dealt with him in the manner that he did. *See* 42 U.S.C. § 2000e-2(a)(1) (it is unlawful "to discriminate against any individual ... because of such individual's ... race"); *Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir. 1996) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n. 10 (1976)); 42 U.S.C. § 2000e-3(a); *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). Placing Defendant at Hoffman Estates branch was likely negligent, or at the very least atypical, according to Postal Service standards. However, Plaintiff has drawn out little evidence that these mistakes and errors were driven by discriminatory animus. In order to prove that any problems surrounding his placement were intentional and malfeasant, rather than accidental, Defendant largely relies on the clear history of bad blood between the parties. In asserting that his placement in a "non-vacant" position, and the dissemination of information regarding his past EEO activities, Plaintiff assumes causality that has not been proven. *See* Pl.'s Prop. Facts at 11. Similarly, when addressing his retaliation claim, Plaintiff states that "there is a causal link between the protected expression and the adverse action," without adequately drawing out evidence of such a link. *Id.* at 11-12.

Plaintiff has not presented evidence sufficient for establishing an independent grounds for a Title VII action. Therefore, this Court finds in favor of the Defendant on all aspects of Plaintiff's Title VII claim of discrimination.

At the same time, Plaintiff has asserted and adequately plead a claim that Defendant stands in contempt of court for not meeting the requirements of the Order. *See, e.g.*, Pl.'s Prop. Facts ¶ 24. As examined below, there is no requirement that Defendant intended to neglect the demands of a court order, so long as the deficiencies are clear. This Court now considers whether Defendant has failed to meet the requirements of its September 3, 2002 order.

### B. STANDARD FOR FAILURE TO COMPLY WITH COURT ORDER

As Plaintiff states, this Court retains jurisdiction and the obligation to accomplish proper relief after final judgment through its contempt power. *Daniels v. Pipe Fitters Ass'n*, 113 F.3d 685 (7th Cir. 1997). "To support a federal civil contempt conviction, it must be proved: '(1) that the court entered a lawful order of reasonable specificity; (2) the order was violated.'" *Grove Fresh Distrib., Inc. v. John Labatt Ltd.*, 888 F.Supp. 1427, 1436 (N.D. Ill. 1995) (quoting *In re Betts*, 927 F.2d 983, 986 (7th Cir. 1991)).

Unlike criminal contempt, a finding of civil contempt does not require a finding of willfulness. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499 (1949). Rather, "[c]ivil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents." *Id.* The party claiming violation of a court order must "demonstrate by clear and convincing evidence that the respondent has violated the express and unequivocal command of a court order." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993); *see also Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989);

*Grove Fresh Dist.*, 888 F.Supp. at 1436. A jury trial is not required for a civil contempt charge that is remedial or coercive. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 2557 (1994).

"[T]he sanctions for civil contempt are 'employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, [or] to compensate the complainant for losses sustained." *Shakman v. Democratic Org. of Cook County*, 533 F.2d 344, 349 (7th Cir. 1976) cert. denied, 429 U.S. 858 (1976) (citing *United States v. United Mine Workers*, 330 U.S. 258, 302 (1947)).

### C. REQUIREMENTS OF THE SEPTEMBER 3, 2002 COURT ORDER

The Order states that "make-whole relief" required "immediately placing Watson in an EAS 21 level position and with commensurate salary." Mem. Op. and Order at 13. However, Defendant is nonetheless expected to make reasonable inferences when interpreting the demands placed upon it by this Court. "While a court order will not be expanded by implication or intendment beyond the meaning of its terms in order to find the respondents in contempt, it may be read in light of the purposes for which it was entered and it is subject to a reasonable interpretation." *U.S. v. Greyhound Corp.*, 363 F.Supp. 525, 544 (D.C. Ill. 1973) (citing *Terminal R.R. Ass'n. of St. Louis v. United States*, 266 U.S. 17, 29, 45 S.Ct. 5, 69 L.Ed. 150 (1924)).

Defendant dismisses the Order's requirements as having been satisfied, addressing the issue in just three paragraphs of its "Proposed Conclusions of Law":

> This court stated that the issue in this case is whether or not the Postal Service complied with this court's September 3 order. The Postal Service was ordered to 'immediately plac[e] Watson in an EAS 21 position with commensurate salary.' Within 30 days of the court's order, the Postal Service placed Watson into the Hoffman Estates position. The Hoffman Estates position was a Level 21 position,

> Watson was paid a Level 21 salary, and Watson was expected to – and did – perform all of the duties of the Hoffman Estates position.

Def.'s Prop. Facts at 5-6 (citations omitted). However, even though this Court has accepted these statements of fact as true, it is nonetheless possible to disagree with Defendant's subsequent conclusion of law, that "the Postal Service complied with this court's order."

It can and should be expected that Defendant comply with the spirit as well as the letter of this Court's order. *See U.S. v. Greyhound Corp.*, 363 F.Supp. at 544. The remedial measure of placing Plaintiff in a new position of employment must come with assurances that the position is not encumbered by atypical conditions, otherwise the placement could be rendered completely ineffectual as a remedial measure. Therefore, certain additional requirements can reasonably be read into Plaintiff's placement in the EAS 21 position. For example, Plaintiff's placement: must be an actual job, involving real and necessary duties; must carry the same opportunity for future advancement as other similarly-situated positions; cannot be deemed a temporary or interim position; and must be free from workplace hostilities that might make performance difficult. Additional conditions such as these must be inferred from the Order, as they are necessary to meet its purposes. To assume that mere placement in the position, particularly where the adequacy of the surrounding conditions has been called into question, is to over-simplify the matter.

### D. WHETHER THE REQUIREMENTS OF THE ORDER WERE MET

Plaintiff makes several arguments that his position was not in fact sufficient to comply with the Order. Primarily, he claims that it was not in any real sense "vacant" because it was held on a permanent basis by Adam. Secondarily, Plaintiff claims that his prior EEOC and federal court actions were conveyed to his supervisor and those around him, labeling him a

troublemaker in a manner that was entirely unnecessary and inappropriate. Altogether, these encumbrances may have prevented Plaintiff from being afforded the relief ordered by this Court.

The general issue is not, as Plaintiff asserts, "whether or not postal officials had a right to place another manager in his position knowing that it was not a permanent vacant assignment." Pl.'s Prop. Facts at 6. Whether or not the placement was proper under the formal guidelines of the Postal Service, or even under commonly accepted standards of employer-employee propriety, is not of concern to this Court under a civil contempt analysis. In order for Defendant to execute the Order in question, it must be expected that the normal procedures and policies of employment will be supplanted for the sake of resolving what is hopefully a non-standard situation – court-ordered career advancement, intended to remedy discrimination, and backed by the legal authority of the federal judiciary. Therefore, rather than consider whether the actions taken by Defendant in placing Plaintiff in an EAS 21 position were typical, this Court seeks to ensure that Defendant complied with the Order of this Court according to a reasonable interpretation of the terms described above.

The question of typicality becomes more relevant when considering whether information regarding Plaintiff's past discrimination actions was appropriately conveyed to Postal Service employees. With respect to this issue, Defendant's deviation from customary practice is more likely to indicate that the action was retaliatory, and therefore was intended to create difficulties that would tend to undermine the execution of the Order.

### 1. Whether Defendant placed Plaintiff "immediately"

Plaintiff argues that Defendant failed to act with immediacy, and passed up other more appropriate opportunities to place him. Specifically, Plaintiff states that he was passed up for the

St. Charles and Great Lakes positions without any adequate justification, and that the ultimate placement approximately 34 days following this Court's decision failed to satisfy the required "immediacy." However, he has failed to offer any effective arguments against Defendant's explanations for those alleged failures.

First, absent clearer language on this issue in the Order, it was not unreasonable for the Postal Service to assume that only positions within the Northern District of Illinois were to be considered. Therefore, passing up potential placements outside of that geographical area did not represent a violation of the Order.

Second, the St. Charles branch manager position that Plaintiff maintains should have been given to him was within the Northern District of Illinois, but at the time of the Order was in the process of being filled by Atchue. Plaintiff maintains that it was still open as of September 3, 2002, particularly in light of the fact that Atchue's placement was not announced until September 18. However, Defendant has shown that the appointment process on the date of the Order was already far enough along that the position could not be reassigned.

Defendant did not fail in executing its obligations under the court order by placing Plaintiff in an EAS 21 position that commenced October 7, 2002. The term "immediately" that this court used to describe the timing of this remedial action was to be interpreted in the context of the situation – the admittedly vague term may mean different things depending on the situation. In this instance, the term should have been interpreted to mean that Defendant was to place Plaintiff in the first available position that met the demands of the Order, i.e., that was an EAS 21 position appropriate for Plaintiff's skills. As stated above, this Court does not find compelling Plaintiff's argument that Defendant unreasonably passed up other placement

-11-

opportunities. As that is the case, the Hoffman Estates branch manager position was the first available opportunity, and therefore placement into it meets the required immediacy.

Plaintiff makes a point of stating that placement took place over thirty days after the Order was given. This Court notes that the benchmark of thirty days, though reasonable as a general interpretation of "immediate," is not determinative in this instance; nowhere is this time period listed as an express requirement and, in any event, Defendant arguably satisfied such a 30-day limitation by notifying Plaintiff of his new placement, even if he was not able to begin work until several days later. The only other option would have been to terminate another employee to accommodate Plaintiff's placement, and such an extreme measure was not warranted by the circumstances or the language of this Court.[1]

This Court finds that Defendant did not fail to meet the demands of the September 3 order by failing to appoint Plaintiff to the St. Charles branch, providing for a start work date place Plaintiff before 30 days had expired, or pursuing placement opportunities beyond the Northern District of Illinois.

### 3. Whether the Hoffman Estates position was vacant

Plaintiff maintains that the position of Hoffman Estates branch manager was not vacant at the time he began work on October 5, 2002, because it was held by Adam at the time. Plaintiff points to several factors supporting this argument: the fact that the position was not advertised as an open position; that Adam held it as a permanent position; that the allotment of managers at Hoffman Estates branch only included one branch manager; and that it was not customary

---

[1] Plaintiff himself acknowledges that such a measure would be unreasonable. *See* Pl.'s Prop. Findings and Conclusions at 11.

practice within the Postal Service to have two employees share a single position on a permanent basis. In response, Defendant maintains that these perceived inconsistencies in fact complied with Post Office practice in effectuating court orders, even if they did not meet the formal demands of employment policies. According to this argument, any discrepancies surrounding Plaintiff's placement failed to change the fact that he was placed in a position with the duties and pay of an EAS 21 employee.

This Court remains unconvinced that the method of Plaintiff's placement was commonplace and unproblematic. Defendant was unable to persuade this Court on its position that "double-booking" or "encumbered" positions were the norm: though several of the witnesses claimed that they were aware of the practice, they were unable to come up with concrete examples of instances in which it was done. For example, Theresa Green, human resources manager for the Great Lakes area, claimed to have known Postal Service employees who occupied the same permanent job assignment "numerous times...dozens over my years." Tr. at 61. However, when she was asked more directly about this issue, she could list just one example of duplicate post masters, about which she had little concrete information, and which was apparently shared with her "by [Postal Service] attorneys." *Id.* at 61-62. Simmons also tried to explain this situation, and while he maintained that conflicts between permanent and detailed employees could generally be worked out, an employee who has been detailed nonetheless retains "rights to come back" that might be a cause for conflict. Tr. at 46-47.

However, there remains a significant problem with Plaintiff's argument, in that he has not shown how the doubling up of the Hoffman Estates branch manager on paper had any impact on his ability to accomplish his workplace obligations or reap the benefits of the position. He has

not rebutted Defendant's basic factual contention that Plaintiff executed the duties of branch manager, was paid the salary of the position, was not removed from that position, and was treated by those in the workplace as though he held that position. The formal issues that he describes, though they may establish that his appointment to branch manager did not follow the formal policies of Postal Service, nonetheless does not change the fact that for all practical purposes, he served as an EAS 21 employee for years. The formal concerns that he points out do not alter that fact.

The fact of the matter is that Adam never attempted to return to his position at Hoffman Estates. Plaintiff himself admitted this fact on cross-examination, after being impeached with his own prior testimony. Tr. at 142-43. Even if Adam had attempted to reclaim his "permanent position," Plaintiff has not disproved Defendant's ability to simply deny Adam that right based on the Postal Service's general employer power and the compelling need of executing the Order. Plaintiff tried and failed to disprove this fact:

> WATSON: Miss Green, you just testified that if the Court ordered placement of an individual and the incumbent was on a detail and if that incumbent's detail was canceled or decided to come back, he would not – he or she would not be allowed to come back to their own permanent office?
>
> GREEN: We would not cancel one and return them to a job where we had – a Court had ordered us to put a person in there.
>
> WATSON: What if it was the individual's, the incumbent's own desire to come back to his or her position, would they be able to?
>
> GREEN: We have always been able to work that out to my knowledge in the past so that that did not happen.
>
> WATSON: But my question is would that individual be able to come back to that position if it was their choice to end the detail?

| | | |
|---|---|---|
| GREEN: | | The Postal Service holds the ultimate right to reassign someone. So even if they wanted to come back to that job, we might reassign them to something else. |
| WATSON: | | But the incumbent would have applied for that position, correct? |
| GREEN: | | I would assume so. |
| WATSON: | | And would have gone through the interview process? |
| GREEN: | | I would assume so. |
| WATSON: | | And would have been selected by the selecting official for that position, correct? |
| GREEN: | | I would assume so. |
| WATSON: | | So you're saying that the Postal Service would then have the option of taking that person out of a job that they applied for and be reassigned somewhere else? |
| GREEN: | | We constantly reorganize within the Postal Service and reassign people to brand new jobs. |

Tr. at 65-67.

Naturally, the fact that Plaintiff was not in any real danger of being displaced by Adam could nonetheless be harmful if he was unaware of that fact and suffered as a result. However, Plaintiff has not shown how his day-to-day work experience was negatively impacted by the mere possibility that Adam might return to re-take his permanent position at Hoffman Estates. There was no indication in the record or at trial that Plaintiff suffered workplace anxiety or general practical problems due to the formal encumbrances shown at court. Plaintiff's assertion that the position "was neither vacant nor available for permanent placement," Pl.'s Prop. Facts at 14, while true in some formal sense, therefore does not prove that Defendant failed to execute its obligations under the Order.

### 3. Distribution of information regarding Plaintiff's past EEOC/legal actions

Plaintiff's allegation that Defendant deliberately spread information related to Plaintiff's discrimination and EEOC actions is troubling, in that it might have effectively undermined the placement at the Hoffman Estates branch. In support Plaintiff points to: the fact that his supervisor, Victor, was given a copy of this Court's opinion; the fact that the case number of the related proceedings was included in his PS Form 50; and the fact that other Postal Service employees were generally aware of Plaintiff's background leading up to his placement as branch manager. Defendant has advanced various arguments in an attempt to legitimize these actions: that to some degree the court order mandating Plaintiff's placement had to be revealed to Hoffman Estates branch staff in order to provide a reason why the typical appointment process was supplanted; that the information did not reveal information beyond what was warranted by Postal Service procedures; and that Plaintiff himself informed Postal Service staff of his background.

Plaintiff asserts that, as a general matter, sharing information regarding an employee's EEO history could help create a negative workplace environment. *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir. 1996). Indeed Florene Matthews ("Matthews"), the EEO dispute resolution specialist assigned to Plaintiff's case, testified that the sharing of EEO actions to unrelated Postal Service personnel is inappropriate:

> WATSON: In your capacity as an EEO dispute resolution specialist, is it appropriate to disseminate an employee's EEO activity to other noninvolved persons?
>
> MATTHEWS: No.
>
> WATSON: Why not?

| | | |
|---|---|---|
| MATTHEWS: | | We only, we only gather or gain information from those people that can help resolve the complaint or implement the complaint or a settlement in the complaint. |

Tr. at 89.

However, Matthews' words at trial are not dispositive when it comes to the propriety of sending the Order to Victor in this particular instance. As Plaintiff's supervisor, Defendant could reasonably have believed that Victor needed to be informed concerning the details of the Order so as to "help resolve the complaint or implement the complaint or a settlement in the complaint." *Id.* Indeed, when asked to explain the reason behind sending the opinion to Victor, Simmons stated that the supervisor had "a right to know happened there. It was the result of a court order. I mean, normally he chooses the manager of the Hoffman Estates branch and he did not at this point, and he has a right to know what happened." Tr. at 26. That this action may have been ill-intentioned is further undermined by the fact that Plaintiff could point to no impact that it had on his working conditions:

| | |
|---|---|
| Q: | [Victor] was your supervisor for about how long? |
| Watson: | I would say maybe a year or so. |
| Q: | Was it actually closer to two years? |
| Watson: | It could have been. |
| Q: | And as far as your working relationship with Michael Victor, the two of you got along fine? |
| Watson: | Yes. |
| ... | |
| Q: | So your fear that Michael Victory would think that you were a troublemaker because Bill Simmons sent him a copy of Judge Coar's order never came true, did it? |

>
> Watson: No.

Tr. at 143-44.

Including a reference to EEO activity in an employee's permanent record is generally inappropriate and unnecessary. The only explanation Defendant has advanced for the need to share EEO activity as a general matter – that it is necessary to justify a change in employment to those supervisors who might be impacted by that change – cannot provide justification for comments placed on Plaintiff's permanent file. There is nonetheless disagreement as to whether including additional information on Plaintiff's Form 50 was inappropriate in this particular instance. First, the only language included in the PS Form 50 is vague, in that it refers to the case number of Plaintiff's prior discrimination complaint, and does not mention either the EEO process or discrimination directly. Second, there is some disagreement over the degree to which it is inappropriate to mention EEO activity on an employee's permanent record. Compare the testimony of Simmons, Manager of Human Resources for the Northern Illinois District:

> Q: And did you testify that it is not appropriate for EEO activity to be placed in an employee's official personnel file?
>
> A: Yes.

Tr. at 33, with that of Phyllis Lingenfelser, currently manager of human resources for the Northern Illinois District:

> Q: The question is on a form 50 is it appropriate to reference EEO activity. That's the question.
>
> A: If it would result in a change in the form 50, yes.

Tr. at 83.

Nonetheless, without any explanation as to why it is necessary to include this language at all, it can reasonably be inferred that the intent was to place a black mark on Plaintiff's employment record. This Court does not see any rational reason for drawing a distinction between EEO activity and a past civil action resulting in a new job placement. Indeed, Defendant was unable to produce a single example of a judicial proceeding resulting in employment changes that did not involve discrimination and/or the EEO. To the extent that any inclusion of this information on an employee's permanent record would be shown to parties not impacted by the employee's initial placement, this Court can find no valid reason for incorporating it into the Form 50. Postal Service employees repeatedly testified that information regarding past EEO activity was not to be freely distributed; Phyllis Lingenfelser's statement at trial that it is appropriate "[i]f it would result in a change in the form 50" does not counterbalance that repeated testimony. Tr. at 83.

At various times, Plaintiff also mentioned that others within the Postal Service were aware of his background with respect to discrimination and EEO actions. However, Plaintiff has failed to establish the significance of this fact. To the extent that many employees likely knew of Plaintiff's history of success in fighting discrimination within the Postal Service, it cannot be said that the mere knowledge of how he arrived at his appointment at Hoffman Estates adds to Defendant's alleged malfeasance.

The question at this point is whether mentioning the prior action in Plaintiff's permanent record amounted to a violation of the Order, in that it intentionally placed roadblocks on the remedial path laid out by this Court. It did not. Defendant has largely failed to explain the formal failings surrounding its actions, despite defense witnesses repeated efforts to do so.

However, taken as a whole these discrepancies did not amount to thwarting the will of this Court.

The crux of Plaintiff's argument is that the position in which he was placed, and the conditions that went along with it, were tailored in such a way as to give the appearance of compliance with the Order, while in fact creating a hostile and artificial work environment that was intended to result in Plaintiff's rapid removal. However, there is little to prove that this was the case. First, many of the inconsistencies can and should be viewed as little more than the bending of rules to accommodate the atypical placement of an employee through court order rather than the normal mechanisms of Postal Service employment practices. Second, the problems described do not appear to have been coordinated in such a way as to show a calculated effort to "place Watson in a position which would ultimately subject him to divestment." Pl.'s Prop. Facts at 8. Third and most importantly, Defendant's actions do not appear to have had a real impact on Plaintiff's ability to meet the demands and reap the benefits of his position in a manner that would undermine the Order.

## III. CONCLUSION

After carefully reviewing the evidence in this case, this Court concludes that judgment on all counts will be entered in favor of Defendant. This case is CLOSED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **May 15, 2007**